HUSTON, J.
This is an appeal by the plaintiff from a judgment and decree of the district court for Bingham county, in an action by the plaintiff to establish his right to the waters of Gooseberry creek and its tributaries, and to restrain the defendants from interfering therewith. The case was heard upon pleadings and proofs before the court without a jury, and is brought here upon a statement of the case, containing all the evidence, the findings of the court and the decree and judgment. The plaintiff, and those under whom he claims, settled upon certain lands lying upon and along Gooseberry creek, in Bingham county, Idaho, in the years 1871, 1873, and 1873. These lands were at the time unsurveyed public lands of the /United States. Subsequently, after the lands were surveyed, said parties secured title to their various claims, plaintiff tak *257 ing one hundred and sixty acres under the pre-emption laws, and the other parties securing different amounts, under the preemption and homestead laws. The said parties at the time of settling upon their said lands made appropriations of all the waters of Gooseberry creek, for the purpose of irrigating the lands so settled upon by them, and title to which was afterward acquired as aforesaid. Gooseberry creek is a small stream flowing down from the mountains upon and through said lands. The fall of the stream is quite precipitous, until it reaches the lands of the plaintiff. The supply of water in the creek is derived from the melting snows of the mountains, and its quantity is consequently dependent upon the snowfall in the mountains. Ordinarily, in the spring of the year, and up to June, the flow of the waters in Gooseberry creek will reach from one hundred and twenty to one hundred and fifty inches. After June 1st the waters decrease quite rapidly, and the stream is usually nearly, if not entirely, dry by the 1st of September. In the years 1888 and 1889, by reason of the slight snowfall, the supply of water in Gooseberry creek was very limited. Under their appropriations, in 1872 and 1873, the plaintiff and his grantors had claimed, appropriated and used, for the purpose of irrigating their said lands, all the waters of said Gooseberry creek since the location of defendants. Occasionally, in the spring of the year, the supply of water in the creek would be in excess of the wants of plaintiff and his said grantors, in which event the defendants, or some of them, utilized such surplus waters upon their lands. Plaintiff and his grantors, in 1872 and 1873, for the purpose of so utilizing the waters of said Gooseberry creek in the irrigation of their said lands, constructed two ditches, one taking the water from the south side of said creek, and the other from the north side thereof: Said ditches were of a capacity more than sufficient to carry all of the waters of said creek, and were and have been continuously used by the plaintiff and his grantors for the purpose of irrigating their said lands. None of the defendants claim to have appropriated or claimed any of the water of Gooseberry creek prior to 1877, and from that year to 1885, at all of *258 which periods the plaintiff and his grantors were in the possession and occupancy of all the lands now claimed by plaintiff, and were using all the waters of said Gooseberry creek in-irrigating said lands, except in case of surplus, as before stated. The lands, both of plaintiff and defendants, are partly meadow and partly upland; but neither of whose lands, as is-conclusively shown by the evidence on the part of both plaintiff and defendants, will produce remunerative crops without irrigation, although at times the meadow lands, by reason of the nature of the soil, become quite wet from irrigation. The lands of the defendants are all located higher upon Gooseberry creek than the lands of the plaintiff. In the years 1888 and 1889, the defendants took so much of the waters of Gooseberry creek as to leave the plaintiff without sufficient water-for the proper irrigation and cultivation of his ■ said lands, whereby the plaintiff was greatly injured and damaged in the-failure of his crops for' want of proper irrigation. Hence plaintiff brings this suit, and prays that his right to the waters of' said Gooseberry creek and its tributaries, by reason of his prior appropriation, may be established, and that defendants may be restrained from interfering therewith.
Defendants allege location of lands by defendant Hardwick, of one hundred and sixty acres in 1877; defendant T. Croshaw, one hundred and sixty acres in 1887; by defendant B. Croshaw,. one hundred and sixty acres in Í882; and defendant Beck-stead, one hundred and sixty acres in 1877; defendant Cox, one hundred and sixty acres in 1878; defendant Denny, one hundred and sixty acres in 1880; and that said lands are-valueless for cultivation without artificial irrigation. That'all of said defendants, except defendants T. Croshaw and Beck-stead, claim to have appropriated one hundred and sixty inches each of the waters of Gooseberry creek, at the time of making their land locations- or settlements, to wit: Hardwick, one-hundred and sixty inches; Cox, one hundred and sixty inches;. Denny, one hundred and sixty inches; B. Croshaw, one hundred and sixty inches; and defendant T. Croshaw, one hundred and sixty inches from Chicken creek, a tributary of Gooseberry creek. The defendant Beckstead claims that the water- *259 used by him is derived from a source foreign to, and not tributary to, Gooseberry creek, and we think his contention in this regard is sustained by the evidence.
Thus it will be seen that, besides the location, or rather appropriation, by the plaintiff and his grantors, in 1871, 1872 and 1873, of all of the waters of said creek, there has since been appropriated by the defendants eight hundred inches of said water. The plaintiff alleges, and we think his allegation in this behalf is fully borne out by the evidence, that all the waters-of the creek are necessary for the irrigation of the lands owned by him, and susceptible of irrigation from the waters of said creek and its tributaries. The only witness who testifies to the amount of water ordinarily flowing in said Gooseberry creek is William H. Homer, who states that in the spring (the season when the water is presumed to be at its highest) of 1871 “there was about eighty or one hundred inches of water in Gooseberry creek. I think that would be a fair average of water in the creek for every year except the last two years” — that is, 1888 and 1889 — which years, the record shows, were exceptionally dry. -This evidence is not contradicted, disputed or sought to be impaired.
We then have this anomalous condition of affairs: A creek or stream flowing one hundred inches of water, with appropriations of-that water to the amount or extent of eight hundred inches, in addition to the prior appropriation by the plaintiff of all the waters of the creek and its tributaries. To the ordinary mind, this might, and perhaps does, present a somewhat difficult problem for judicial solution, unaided by the statutes; but the learned district judge found no difficulty whatever in reaching a conclusion as unique as it is unprecedented. We say unprecedented, because this question, under statutes identical with that of Idaho, has been decided so often in favor of the prior appropriator that it has been generally considered, both by professionals and profanes, as a settled question; as instance, the question had been decided up to 1889 twice by the supreme court of the Hnited States, seventeen times by the supreme court of California, five times by the: *? supreme court of Colorado, six times by the supreme court of Nevada, twice by the supreme court of Montana, once by the supreme court of New Mexico, twice by the supreme uourt of Utah, once by the supreme' court of Oregon, ■and repeatedly by the supreme court of Idaho. In fact, the decision of the learned district judge in this case stands alone. We have been unable, by the most diligent search, to find a precedent or parallel for it. Heroically setting aside the statute, the decisions and the evidence in the case, he assumes the role of Jupiter Pluvius, and distributes the waters of Gooseberry creek with a beneficent recklessness, which makes the most successful efforts of all the rain wizards shrink into insignificance, and which'would make the hearts of the' ranchers on Gooseberry dance with joy, if only the judicial decree could be supplemented with a little more moisture. The individual who causes two blades of grass to grow where but one grew before is held in highest emulation as a benefactor of his race. How, then, shall we rank him who, by judicial fiat alone, can cause four hundred inches of water to run where nature only put one hundred inches? (We veil our faces, we bow our heads, before this assumption of judicial power and authority.)
There was no issue made, it seems from the record, upon the title to the lands of either the plaintiff or any of the defendants. The priority of the plaintiff’s appropriation is established beyond question or peradventure; in fact, it is scarcely contested or disputed. It was claimed by the counsel for defendants, upon the argument here, that plaintiff’s land did not require irrigation, or, at least, only a small portion of it; but the evidence on the part of the defendants themselves shows that the meadow lands of plaintiff require irrigation, and one of the defendants testifies that the meadow lands will not produce a remunerative crop without irrigation; and this is a matter of such general knowledge with all who are at all acquainted with the lands and soil of this state as scarcely to need testimony to establish it. The following is the tabulated distribution of the waters of Gooseberry creek as decreed by the district court: Ira K. Hillman (plaintiff), to June 15th, seventy-five inches; to July 15th, forty' inches; after July 15th, twenty-five inches. John H. Hardwick (defendant), to June 15th, sixty inches; to July 15th, thirty inches; after July 15th, thirty inches. Harry Denny (defendant), to June 15th, sixty inches; to July 15th, thirty inches; after July 15th, twenty-five inches. Len Cox (defendant), to June 15th, forty inches; to July 15th, twenty inches; after July 15th, fifteen inches. Ben. Croshaw (defendant) — from South Fork — to June 15th, twenty inches; to July 15th, ten inches; after July 15th, eight inches. Same (from main creek), to June 15th, thirty inches; to July 15th, twenty- inches; after July 15th, fifteen inches. T. Croshaw, to June 15th, .forty-five inches; to July 15th, thirty inches; after July 15th, twenty inches. Alex Beckstead, to June 15th, forty inches; to July 15th, twenty-five inches; after July 15th, fifteen inches — and yet the evidence shows that one hundred and fifty inches is the maximum of water flowing in the creek at its highest stage. It appears from the record that the defendant Beckstead never located, claimed or used any of the waters of Gooseberry creek; and he claims, and his claim is established by the evidence, that he derives all the water used by him from an entirely different source, and yet, willy-nilly, the court gives him his specified amount of water from Gooseberry creek. Evidently the court assumed that Gooseberry creek was as inexhaustible as the widow’s cruse, or else that its decree possessed the potency of Moses’ rod. All the provisions of the statute in regard to priority of right incident to priority of appropriation are ignored, as are the sources and'volume of supply. Revised Statutes of Idaho, section 3159, treating of water rights, provides: “As between appropriates, the one first in time is first in right.” Section 3165 of same chapter provides that “all ditches, canals and other works heretofore made, constructed or provided, by means of which the waters of any stream have been diverted and applied to any beneficial use, must be taken to have secured the right to the waters claimed, to the extent of the quantity which said works are capable of conducting, and not exceeding the *262 quantity claimed, without” regard to or compliance with the requirement of this chapter.” The evidence establishing, as it does, beyond all doubt, the prior appropriation by the plaintiff and his grantors of all the waters of Gooseberry creek and its tributaries, and the continuous use thereof by plaintiff and his grantors for the irrigation of his and their said lands, we are unable to account for the decree rendered by the district court upon any hypothesis which recognizes the principle that it is the province of courts to administer the law as they find it, not to make laws in accordance with their ideas or notions, no matter how beneficent the object sought to be attained may be.
Many of the questions raised by counsel on the argument of this case were not considered or passed upon by the district court, and are not, in the opinion of this court, essential to a decision of the case, and we have not, therefore, considered them. The record fails to show any interest or- claim of interest in the waters of Gooseberry creek by defendant Cox, ■and it, moreover, appears from the record that the defendant Beckstead derives the water used by him from a source other than Gooseberry creek. Still as they, in common with the ether defendants, are made beneficiaries under the beneficent decree of the district court, the injunction must run against them also. The decree and judgment of the district court are reversed, and the cause remanded, with directions to the district court to enter a judgment and decree in favor of the plaintiff for all the waters of Gooseberry creek, and the tributaries thereof, to the extent of one hundred and twenty-five inches, that being the capacity of the plaintiff’s ditches taking water from said Gooseberry creek prior to the attempted appropriation of any of the defendants; and enjoining the said defendants, and each of them, and the agents and servants thereof, from in any manner interfering with said right to the waters of said creek, and the tributaries thereof, to the extent of said one hundred and twenty-five inches.
Sullivan, C. J., concurs.
*263 Morgan, J., having been of counsel in the court below, took no part in the hearing or decision.