IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| OLENA SMITH, | § | |
| | § | No. 14, 2024 |
| Plaintiff Below, Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| WILLIAM CAREY, | § | C.A. No. N23C-07-035 |
| | § | |
| Defendant Below, Appellee. | § | |

Submitted: July 12, 2024
Decided:   September 23, 2024

Before **SEITZ,** Chief Justice; **VALIHURA** and **GRIFFITHS**, Justices.

## <u>ORDER</u>

(1)    The appellant, Olena Smith, appeals from the Superior Court's December 15, 2023, order dismissing Smith's personal-injury complaint against the appellee, William Carey.  For the reasons discussed below, we affirm the Superior Court's judgment.

(2)    Smith, who was not represented by counsel, filed a personal-injury action in the Superior Court on July 7, 2023.  The complaint, case-information statement, praecipe, and summons identified Smith as the only plaintiff and Carey as the only defendant.  The complaint alleged that Carey's eight-year-old son, Elijah, who was dressed as Captain America, struck Smith's ten-year-old daughter, Katia, in the face with a plastic shield while the children were at a playground during a swim meet.  It alleged that Elijah "was very unruly and ran throughout the area

unsupervised with little regard of who was near him." After Katia showed her injury to Smith and reported that "Captain America hit me with the shield," Smith searched for the responsible child. Smith spotted a cape and shield "covered on a blanket by the fence" and saw Elijah "sitting away from the blanket without parents." Smith made contact with Carey and obtained his contact information, then took Katia to the emergency room.

(3) As alleged in the complaint, the blow caused Katia to lose 85% of a permanent tooth, requiring a partial root canal and the application of a veneer. Several dentists opined that Katia would require a full root canal and crown in a few years and eventually an implant. The complaint also described the emotional distress that the incident and injury caused Katia. Smith sought to recover (i) past medical and dental expenses ($525); (ii) the projected cost of future treatments ($10,955); and (iii) compensation for emotional distress ($4,000).

(4) Carey, who was represented by counsel, moved to dismiss. Citing Superior Court Rule of Civil Procedure 17(a), he asserted that Smith and Carey were not the real parties in interest in the matter. He also argued that the complaint failed to state a claim upon which relief could be granted. Specifically, he argued that the complaint did not identify any negligence or conduct by Carey and did not allege wrongdoing by any party involved in the incident. He also asserted that the complaint did not plead negligence with sufficient particularity.

(5)     The Superior Court granted the motion to dismiss.  The court rejected Carey's contention that the complaint was subject to dismissal because it did not name the real parties in interest.  The court stated that, under Rule 17(a), the *plaintiff* must be the real party in interest and held that, because a parent is financially responsible for her minor child's care, the parent may sue to recover medical expenses she incurs as a result of tortious injury to the child.[1]  But the court determined that the complaint failed to state a claim upon which relief could be granted.  The court stated that it could not determine from the complaint whether Smith was claiming an intentional or negligent tort; to the extent Smith claimed an intentional tort, the complaint did not allege any intentional act; and to the extent Smith was asserting a cause of action that sounded in negligence, Smith "fail[ed] to plead any facts to go toward negligence."[2]

---

[1] *Smith v. Carey*, 2023 WL 8676290, at *1 (Del. Super. Ct. Dec. 15, 2023) (citing, among other decisions, *Hobbs v. Lokey*, 183 A. 631 (Del. Super. Ct. 1936)).  In *Hobbs*, a father sued on behalf of his minor child for damages caused by the defendant's negligence; the father did not assert a claim on his own behalf.  The Superior Court held that the cost of medical services provided to the child could not be recovered in the action because the father, as the person "liable for the support and maintenance of his minor son," was primarily liable for those expenses, "it cannot be presumed that he will not meet his obligations," and there was no evidence that the child had paid them.  *Id.* at 632.  The court observed that the father would have "a right of action to recover the loss and damage accruing to him"—that is, the father could sue on his own behalf to recover the cost of the son's medical care for which the father paid—and noted that "[i]n most cases when the facts justify it, though a separate action is brought by the father for loss of services and for expenses necessarily incurred, by agreement of counsel both cases are tried together as though they were one action." *Id.* at 632 & n.1.  The comparable approach in modern practice would be for the parent to file a complaint naming herself and her minor child as plaintiffs, asserting applicable causes of action, including the element of damages, with respect to each plaintiff.
[2] *Smith*, 2023 WL 8676290, at *2.

(6) This Court reviews *de novo* a trial court's decision to dismiss a complaint for failure to state a claim.[3] "We must accept all well-pleaded allegations as true and draw reasonable inferences in favor of the plaintiff."[4] "'Nevertheless, conclusory allegations need not be treated as true, nor should inferences be drawn unless they truly are reasonable.'"[5] As the Superior Court recognized, a complaint filed by a self-represented plaintiff, "however inartfully pleaded, may be held to a somewhat less stringent technical standard than formal pleadings drafted by lawyers."[6] But a *pro se* complaint is subject to dismissal for failure to state a claim if it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.[7]

(7) On appeal, Smith argues that the complaint alleged facts sufficient to state claims for the intentional tort of battery, negligent supervision, and negligent infliction of emotional distress. We address each of these claims in turn.

(8) Smith asserts that the complaint stated a claim for the intentional tort of battery because (i) it alleged that Elijah hit Katia with a plastic shield, breaking Katia's tooth and (ii) Smith attached to the complaint a copy of a police report stating that Elijah hit Katia in the face with a plastic shield "after believing [Katia] grabbed

---

[3] *Clouser v. Marie*, 2022 WL 5069525, at *2 (Del. Oct. 4, 2022); *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 610 (Del. 2003).
[4] *Country Life Homes, LLC v. Gellert Scali Busenkell & Brown, LLC*, 259 A.3d 55, 59 (Del. 2021).
[5] *Id.* (quoting *Feldman v. Cutaia*, 951 A.2d 727, 731 (Del. 2008)).
[6] *Vick v. Haller*, 1987 WL 36716, at *1 (Del. Mar. 2, 1987).
[7] *Id.*

his shirt." To survive dismissal, a complaint claiming battery must allege that the defendant engaged in intentional, unpermitted contact upon the plaintiff's person that was harmful or offensive.[8] The required intent is the intent to make contact with the person, not the intent to cause harm.[9] Smith sued Carey, not Elijah, and the complaint did not allege that Carey made any physical contact with Smith (or Katia) at all, let alone any intentional contact.[10] The complaint therefore failed to state a claim for the intentional tort of battery.

(9) Smith also contends that the complaint alleged facts sufficient to state a claim against Carey for negligent supervision of Elijah. She points to the allegations that Elijah (i) struck Katia in the face with a plastic shield and (ii) was "very unruly and ran throughout the area unsupervised with little regard of who was near him." Smith argues that, "[b]ased on the unruly behavior of the child, the Defendant should have known that an unsupervised 8-year-old child, who was dressed as Captain America and wielding a plastic shield (a dangerous instrument), could cause harm to others."[11] Smith asserts that Carey is liable for the injury that

---

[8] *Browne v. Saunders*, 2001 WL 138497, at *1 (Del. Feb. 14, 2001); *Miller v. Dockham*, 1998 WL 977117, at *3 (Del. Nov. 19, 1998).

[9] *Miller*, 1998 WL 977117, at *3.

[10] *See generally Robinson v. Christina Sch. Dist.*, 2022 WL 5060165, at *10 (Del. Super. Ct. Sept. 21, 2022) ("'It is well established at common law that the mere relationship of parent-child imposed no liability on the parent for the torts of his minor child.'" (quoting *Rovin v. Connelly*, 291 A.2d 291, 292 (Del. Super. Ct. 1972))).

[11] Opening Brief at 6.

Elijah caused because Carey "failed to supervise and take reasonable action to control his son's unruly behavior."

(10)  "It is well established at common law that the mere relationship of parent-child imposed no liability on the parent for the torts of his minor child."[12]  But a parent has "a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control."[13]  Thus, the "general rule is that a parent may be liable for the consequences of failure to exercise the power of control which he has over his children, where he knows, or in the exercise of due care should have known, that injury to another is a probable consequence."[14] Moreover, "Delaware law requires that negligence be pleaded with particularity."[15]

(11)  Applying these principles to Smith's complaint, we have concluded that the complaint failed to state a claim for negligent supervision.  The complaint did not allege with particularity how Carey failed to exercise appropriate control of

---

[12] *Rovin*, 291 A.2d at 292.

[13] RESTATEMENT (SECOND) OF TORTS § 316, *quoted in Robinson*, 2022 WL 5060165, at *10, *and Mancino v. Webb*, 274 A.2d 711, 712 (Del. Super. Ct. 1971).

[14] *Robinson*, 2022 WL 5060165, at *10 (internal quotations omitted); *Mancino*, 274 A.2d at 712 (same).

[15] *Shively v. Klein*, 551 A.2d 41, 44 (Del. 1988); *see also* DEL. SUPER. CT. R. CIV. PROC. 9(b) ("In all averments of . . . negligence . . ., the circumstances constituting . . . negligence . . . shall be stated with particularity.").

Elijah, nor did it plead any facts, such as "a prior mischievous and reckless disposition of [Elijah] and [Carey's] knowledge thereof,"[16] to suggest that Carey should have known that injury to another person was a probable consequence.[17] To the extent that Smith attempted to plead a negligent-supervision claim, the Superior Court did not err by dismissing the complaint.

(12) Smith argues that the complaint stated a cause of action for negligent infliction of emotional distress (NIED) because it described Katia's injury, detailed the distress that the injury caused Katia, and requested $4,000 in damages for emotional distress. As a general matter, a plaintiff establishes NIED by showing that the defendant's "negligence proximately caused fright, in one within the immediate area of physical danger from that negligence, which in turn produced physical consequences such as would be elements of damage if a bodily injury had been suffered."[18] "The law of Delaware is well settled that a claim of negligent infliction of emotional distress or mental anguish may not be maintained in the absence of evidence of a present physical injury" to the plaintiff.[19] Smith was the

---

[16] *Mancino*, 274 A.2d at 713.

[17] *See Robinson*, 2022 WL 5060165, at *9-10 (granting parents' motion to dismiss because the complaint did not "allege facts . . . that indicate that [the parents] had any knowledge prior to the [i]ncident that [their child had previously engaged in similar conduct] or had any propensity to act in a manner that when left unaccompanied and unsupervised could reasonably result in 'mischievous and reckless' conduct causing injury to another" (quoting *Mancino*)).

[18] *Robb v. Pa. R.R. Co.*, 210 A.2d 709, 714-15 (Del. 1965).

[19] *McKnight for McKnight v. Voshell*, 1986 WL 17360, at *3 (Del. Aug. 6, 1986); *see also Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647, 651 (Del. 1984) ("In any claim for mental anguish, whether it arises from witnessing the ailments of another or from the claimant's own

only plaintiff in the action,[20] and the complaint did not allege that Smith suffered any physical consequences from the incident. The complaint therefore did not state a claim for NIED.

(13) Finally, Smith contends that the Superior Court's dismissal of the complaint violated her constitutional right to a jury trial. Her argument is misplaced. "The Delaware Constitution preserves the right to trial by jury as it existed at common law."[21] Thus, if an action "known to the common law" proceeds to trial in the Superior Court, the parties generally are entitled to request a jury trial.[22] Not

---

apprehension, an essential element of the claim is that the claimant have a present physical injury."); *Robb*, 210 A.2d at 711 ("[I]t is accepted as settled that there can be no recovery for fright alone, not leading to bodily injury or sickness, arising from the negligence of another."). *Cf. Armstrong v. A.I. Dupont Hosp. for Children*, 60 A.3d 414, 423 (Del. Super. Ct. 2012) (denying motion to dismiss parents' NIED claim arising from defendants' negligent medical treatment of their son where the defendants' negligence occurred in the parents' presence, and stating that parents alleged that the incident caused the parents to suffer bodily injury, sickness, and mental illness).

[20] A parent may sue on behalf of a minor child. *See* DEL. SUPER. CT. R. CIV. PROC. 17(c) ("Whenever [a minor child] or incompetent person has a representative, such as a general guardian, trustee, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the [minor child] or incompetent person. [A minor child] or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. . . ."). But Smith did not do so. Smith did not state that she was suing as Katia's next friend or guardian, nor did the complaint, case-information statement, praecipe, or summons identify Katia as a plaintiff.

[21] *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911-12 (Del. 1989); *see also Baird v. Owczarek*, 93 A.3d 1222, 1226 (Del. 2014) ("Following the adoption of the Fourteenth Amendment to the United States Constitution, the Sixth Amendment right to trial by jury in *criminal* proceedings has been deemed to have been incorporated by the Due Process clause and now also provides protection against state action. Nevertheless, the United States Supreme Court has not held that the Seventh Amendment's guarantee of jury trials in *civil* proceedings was made applicable to the states by the incorporation doctrine . . . . Accordingly, the right to a jury trial in civil proceedings has always been and remains exclusively protected by provisions in the Delaware Constitution." (citations omitted)).

[22] *Graham*, 565 A.2d at 912.

every action must proceed to trial, however; preliminary requirements must first be satisfied. One such requirement is that the complaint must state a legally cognizable cause of action. Because the complaint in this matter did not do so, dismissal of the complaint did not violate Smith's right to a jury trial.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

9