519 P.2d 1168

George LEMMON and Norman Standal,
Plaintiffs-Appellants,

v.

Earl M. HARDY and Richard Kaster,
Defendants-Respondents.

No. 11314.

Supreme Court of Idaho.

March 11, 1974.

Collins & Manly, Boise, for plaintiffs-appellants.

John A. Rosholt, of Parry, Robertson, Daly & Larson, Twin Falls, for defendants-respondents.

Nathan W. Higer, Deputy Atty. Gen., Boise, for amicus curiae.

McQUADE, Justice.

This action arises out of a dispute over the priority to the use of certain waters of Box Canyon Creek in Gooding County, Idaho. On June 19, 1969, the appellants, George Lemmon and Norman Standal, filed an application for water permit no. 36–7066 to divert 400 cubic feet of water from Box and Blind Canyon Creek. The application stated that the purpose of the diversion was for fish propagation, and that the water would be applied to land leased from the Idaho Power Company and/or Magic Springs, Inc. Notice of the application was published and the respondent Richard M. Kaster filed a protest.

On October 8, 1969, the respondents, Earl M. Hardy and Richard Kaster, were declared the successful bidders on the same Idaho Power Company property which the appellants had claimed as a leasehold in their application for a water permit. The respondents filed an application for water permit no. 36–7091 on October 27, 1969, for the diversion of 300 cubic feet of water from Box Canyon Creek for fish propagation. The application stated that the water was to be applied to the land purchased from the Idaho Power Company. Protests to the application were filed by the appellants.

On November 26, 1969, the appellants filed an "amended application" for permit no. 36–7066 for a total of 400 cubic feet of water from Box and Blind Canyon Creeks.

The amended application changed the point of diversion[1] and place of use of the water.[2] Protests against the amended application were filed by the respondents.

The Department of Water Administration (hereinafter referred to as the Department) consolidated all the above protests and a hearing was held before the Director of the Department (hereinafter referred to as the Director) on October 19, 1970. Findings of fact, conclusions of law and an order were issued by the Director on April 28, 1971, which found that there was insufficient water available to satisfy both applications. The Director ordered that both applications be approved and water permits issued, but that the appellants' priority date to the use of the water be postdated from the date of their original application of June 19, 1969, to the date of their amended application of November 26, 1969. The respondents' priority date remained October 27, 1969.

Pursuant to I.C. § 67–5215, the appellants petitioned the district court to review the Director's findings of fact, conclusions of law and order. A judgment was entered by the district court which affirmed the Department's decision. The appellants appeal from that judgment to this Court.

The Director's order was based on a holding that the respondents had a vested right as of the date of their application for a water permit to the continuance of existing stream conditions. This included the likelihood of the development of water rights by other applicants, but only in the place and manner set forth in their applications. In their appeal, the appellants contend that the Director's holding was erroneous and the trial court erred in af-

firming it. This Court need nor rule on the Director's holding because there is an alternative basis to affirm the Director's order and the trial court's judgment.[3]

The hearing on the consolidated protests was held in accordance with I.C. § 42–203 which authorizes the Director to,

"[F]ind and determine from the evidence presented to what use or uses the water sought to be appropriated can be and are intended to be applied, and where such proposed use is such that it will reduce the quantity of water under existing water rights, or that the water supply itself is insufficient for the purpose for which it is sought to be appropriated, or where it appears to the satisfaction of the department that such application is not made in good faith, is made for delay or speculative purposes, or that the applicant has not sufficient financial resources with which to complete the work involved therein, the state reclamation engineer [director of the department of water administration] may reject such application and refuse issuance of permit therefor, or may partially approve and grant permit for a less quantity of water than applied for, or may grant permit upon conditions."

The respondents' protests were filed on the basis that the appellants' application for a water permit was not filed in good faith but for speculative purposes.

In its findings of fact the Director found that "at the time of filing Application for Permit No. 36–7066, on June 19, 1969, the applicants, Lemmon and Standal [appellants], had no interest in any part of the lands where they proposed to use the

---

1. Change point of diversion on Blind Canyon Creek from SW ¼ NE ¼, Sec. 28, Twp. 8S, R.14E., BM, to NW ¼ SE ¼, Sec. 28, Twp. 8S, R. 14 EBM and changed the point of diversion on Box Canyon Creek from SW ¼ NE ¼, Sec. 28, Twp. 8S, R.14 EBM to NW ¼ NE ¼, Sec. 28, Twp. 8S R.14 EBM.

2. Change in place of use from Lots 2 and 5 and for 3, 4 and 7 of Sec. 28, Twp. 8S, R.14 EBM to SW ¼ of SW ¼ of Sec. 20, Twp.

8S, R.14 EBM; N ½ NW ¼, Sec. 29, Twp. 8S, R.14 EBM; NW ¼ SE ¼, Sec. 28, Twp. 8S, R.14 EBM.

3. Where the final judgment of the district court is entered upon a different theory, it will be upheld on the correct theory. Johnson v. Gorton, 94 Idaho 595, 495 P.2d 1 (1972); Bjornstad v. Perry, 92 Idaho 402, 443 P.2d 999 (1968).

water." [4] In its conclusions of law, the Director held:

"Applications for Permit Nos. 36–7066,

* * * Amended 36–7066, * * * are not void for having been filed without the applicants owning or possessing any rights to the lands where the proposed points of diversion are to be located or the proposed use is to be made. The filing of such applications without such land ownership is not, in and of itself, evidence of speculation and delay nor a demonstration of lack of good faith." [5]

The Director's conclusion of law is in error.

The Director quotes extensively from *Kinney* on irrigation and water rights in reaching the conclusion that it is not speculation to file an application for a water permit without possessing any legal right to the use of the property designated as the point of diversion and place of use. The quotations include the statement that "Even trespassers upon the lands owned by others may make valid appropriations of water * * *." [6] The Director concluded that trespassers may make valid appropriations of water in Idaho [7] and he cited the cases of Mahoney v. Neiswanger; [8] Sarret v. Hunter [9] and First Security Bank v. State of Idaho [10] to support his conclusion. All three cases are limited on their facts to appropriations that were made on unsurveyed federally owned land. *Kinney* states that a " * * * settler upon the unsurveyed lands of the United States has never been regarded as a trespasser * * *." [11] The cases clearly do not support the broad proposition that all trespassers may establish valid water rights.

Furthermore in the case of Bassett v. Swenson [12] it was held that,

"It is quite generally held that a water right initiated by trespass is void. That is to say, one who diverts water and puts it to a beneficial use by aid of a trespass does not, pursuant to such trespass, acquire a water right. Any claim of right thus initiated is void." [13]

The *Bassett* case involved a trespass upon land privately owned. The rule as to trespass and water rights in Idaho appears to be that a water right initiated on the unsurveyed public domain is valid, but a water right initiated by trespass on private property is invalid.

In the case at bar the land designated as the point of diversion and place of use in appellants' original application was private property not owned by the appellants and therefore no valid water right could be developed on it. Since no valid water right was possible, it can be concluded that the application was filed for speculative purposes, not for development of a water right.

The Director also relied on the cases of Marshall v. Niagara Springs Orchard Co.[14] and Bassett v. Swenson [15] in holding that it was not speculation to file an application for the use of water on designated land without a possessory interest in the land. Both cases involved power companies that filed applications for the use of water before obtaining the land for the point of diversion and power facilities by condemnation. It was held that filing an application without land ownership did not invalidate the application as long as the description

4. Clerk's transcript, p. 7.

5. Clerk's transcript, p. 9.

6. 2 C. Kinney, The Law of Irrigation and Water Rights § 688 at 1190 (1912).

7. Clerk's transcript, p. 11.

8. 6 Idaho 750, 59 P. 561 (1899).

9. 32 Idaho 536, 185 P. 1072 (1919).

10. 49 Idaho 740, 291 P. 1064 (1930).

11. § 687, p. 1189.

12. 51 Idaho 256, 5 P.2d 722 (1931).

13. *Ibid*, at 259, 5 P.2d at 723.

14. 22 Idaho 144, 125 P. 208 (1912).

15. Bassett v. Swenson, *supra*, note 13.

of the diversion works was not obtained through trespass. The *Marshall* and *Bassett* cases are distinguishable from this action. The power companies possessed the power of condemnation which permitted them to acquire the necessary land. They were not seeking land upon which to beneficially use the water, but solely for the power site generation purposes. The appellants in this action had shown no means of acquiring the land stated in their original application.

The appellants' filing an application for a water permit with no possessory right in the land designated as the place of use amounted to speculation in and of itself. It is required by I.C. § 42–202 that an application for a water permit set forth,

"4. The location and description of the proposed ditch, channel or other work and the amount of water to be diverted and used.

\* \* \* \* \* \*

"The application shall be accompanied by a plan and map in duplicate of the proposed works for the diversion and application of the water to a beneficial use, showing the character, location and dimensions of the proposed reservoirs, dams, canals, ditches, pipe lines and all other works proposed to be used by them in the diversion of the water, and the area and location of the lands proposed to be irrigated." (Amended 1973).

■ Lack of a possessory interest in the property designated as the place of use is speculation. Persons may not file an application for a water right and then seek a place for use thereof.

The Director's order that the appellants' priority date be postdated to the date of their amended application of November 26, 1969, is correct and the order is affirmed.

Costs to respondents.

SHEPARD, C. J., and DONALDSON, McFADDEN and BAKES, JJ., concur.